IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-197-D

| | | |
|---|---|---|
| MICHAEL BOROVSKY GOLDSMITH LLC | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | **ORDER** |
| JEWELERS MUTUAL INSURANCE COMPANY | ) ) ) ) | |
| Defendant. | ) | |

On March 9, 2017, Michael Borovsky Goldsmith LLC d/b/a MB Goldsmiths ("MB Goldsmiths" or "plaintiff"), filed a complaint in Wake County Superior Court against Jewelers Mutual Insurance Company ("Jewelers Mutual" or "defendant") [D.E. 1-2]. MB Goldsmiths alleges breach of contract, breach of the implied covenant of good faith and fair dealing, and bad faith refusal to settle. See Compl. [D.E. 1-2] ¶¶ 26–41. It seeks $25,000 in damages on each claim and $25,000 in punitive damages on its bad faith claim. Id. On April 26, 2017, Jewelers Mutual removed the action to this court pursuant to 28 U.S.C. § 1441 [D.E. 1]. On May 3, 2018, Jewelers Mutual moved for summary judgment [D.E. 19], filed a memorandum in support [D.E. 20], and filed a statement of material facts [D.E. 21]. On May 24, 2018, MB Goldsmiths responded in opposition [D.E. 23] and moved for partial summary judgment on the breach of contract claim [D.E. 27]. As explained below, the court grants Jewelers Mutual's motion for summary judgment and denies MB Goldsmiths's motion for partial summary judgment.

I.

MB Goldsmiths, a jewelry store originally located in Raleigh, North Carolina, alleges that a foul odor began to permeate its leased premises during the fall of 2013. See [D.E. 1-2] ¶¶ 6–7, 13; [D.E. 21] ¶¶ 1–2. The smell, which resembled "rotten eggs and mold," prompted daily customer comments. [D.E. 21] ¶¶ 3–4, 10. MB Goldsmiths hired plumbers to investigate the odor. The plumbers speculated that a grease trap on the adjacent Chinese restaurant's premises was the cause. See id. ¶ 5. By September 2014, the odor had become intolerable. See id. ¶ 6; [D.E. 1-2] ¶ 14. After the management company and landlord failed to provide any aid, MB Goldsmiths prepared a petition for customers to sign urging action to address the odor. See [D.E. 21] ¶ 11. MB Goldsmiths contends that the "majority of the customer complaints indicated that the odor smelled like sewage" as opposed to moldy. [D.E. 24] ¶ 4 (quotation omitted).

In December 2014, Michael Borovsky ("Borovsky"), the owner of MB Goldsmiths, first noticed a water leak on the premises. See [D.E. 21] ¶ 13. A water tank in an adjacent restaurant caused the leak. See id. ¶ 14. Around the same time, Borovsky noticed mold on the wall of the jewelry store, and he hired Raleigh Mold Inspection and Remediation to perform an inspection. See id. ¶¶ 15–17; [D.E. 1-2] ¶¶ 17–18. The inspection found visible mold growth in the store and a high level of mold in the interior air sample. See [D.E. 22-2] 2–3. Sometime during 2015, a store clerk noticed the mold begin to "bubble." [D.E. 21] ¶ 16. The store clerk could not recall the precise date on which she made this observation. See [D.E. 24] ¶ 16. In June 2015, MB Goldsmiths closed its Raleigh location and operated online until November 1, 2015, when it opened a new location in Graham, North Carolina. [D.E. 21] ¶¶ 18, 20; [D.E. 1-2] ¶ 23.

On April 24, 2015, MB Goldsmiths submitted a claim to Jewelers Mutual for "business interruption" and claimed only "loss of future business income resulting from the necessity of

2

vacating the leased premises due to the presence of mold." [D.E. 21] ¶¶ 23, 26, 30. The parties dispute whether the foul odor or the high levels of toxic mold caused MB Goldsmiths to lose business income. Compare [D.E. 21] ¶ 30, with [D.E. 24] ¶ 30. In addition, MB Goldsmiths did not submit a claim for damage to its business personal property because, aside from one bookcase, MB Goldsmiths did not suffer any business personal property damage as a result of the issues. See [D.E. 21] ¶¶ 27–28.

On April 27, 2015, Jewelers Mutual assigned the claim to an independent claims adjuster. Id. ¶ 31. MB Goldsmiths provided Jewelers Mutual with the foul odor petition from 2014, a report summarizing Raleigh Mold Inspection and Remediation's inspection, and other materials relevant to the claim. See id. ¶ 32. On May 4, 2015, the claims adjuster provided a report to Jewelers Mutual and concluded that "the loss appear[ed] to be the result of a long term leak in the water supply line." Id. (quotation omitted); [D.E. 22-6] ¶ 9(f); [D.E. 22-15] 3. The report noted that there was evidence of rust on the steel framing between MB Goldsmiths's unit and the adjacent restaurant. See [D.E. 22-6] ¶ 9(f); [D.E. 22-15] 4. Although the report stated that it "is unclear if [the odor] is related to the water damage," it recommended denying MB Goldsmiths's claim for coverage because the water leak fell within the insurance policy's exclusion for continuous water damage. See [D.E. 22-15] 3–4; [D.E. 22-5] 93. The report also recommended denying coverage for the claim because the damage was limited to building materials for which MB Goldsmiths did not maintain coverage and because MB Goldsmiths did not provide prompt notice of the claim as required by the insurance policy. See [D.E. 22-15] 3–4.

On June 2, 2015, Jewelers Mutual denied the claim because the insurance policy "excluded coverage for loss or damage caused by a long-term water leakage and mold" and because MB Goldsmiths failed to provide prompt notice of the loss. [D.E. 21] ¶ 33. MB Goldsmiths contends

that the water leak from the adjacent restaurant was not the sole cause of the odor, which it argues was never identified conclusively. [D.E. 24] ¶¶ 32–33. Furthermore, MB Goldsmiths denies that it failed to submit a timely claim because Borovsky believed that the landlord would provide assistance and saw no immediate need to involve Jewelers Mutual. See id. ¶¶ 23, 33.

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A genuine issue of material fact exists if a reasonable jury, considering the evidence, could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248. A fact is material if proof of the fact might affect the outcome of the case under substantive law. Id.; City Grill Grp. Inc. v. Nationwide Mut. Ins. Co., No. 5:12-CV-610-F, 2014 WL 1429552, at *3 (E.D.N.C. Apr. 14, 2014) (unpublished). "When cross-motions for summary judgment are before a court, the court examines

4

each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, LLC, 630 F.3d 351, 354 (4th Cir. 2011).

A.

Jewelers Mutual seeks summary judgment on each of MB Goldsmiths's claims. Subject-matter jurisdiction is based on diversity under 28 U.S.C. § 1332, and the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). The parties agree that North Carolina law applies to each claim.

1.

As for MB Goldsmiths's breach of contract claim, under North Carolina law, a breach of contract claim involves two elements: (1) the existence of a valid contract and (2) breach of the terms of that contract. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 845 (2000). A breach of a contract occurs where there is "[n]on-performance[,] . . . unless the person charged . . . shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him." Cater v. Barker, 172 N.C. App. 441, 447, 617 S.E.2d 113, 117 (2005), aff'd, 360 N.C. 357, 625 S.E.2d 778 (2006) (quotation omitted); see Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n, No. 7:16-CV-249-D, 2016 WL 6330389, at *4 (E.D.N.C. Oct. 27, 2016) (unpublished), aff'd, 698 F. App'x 750 (4th Cir. 2017) (per curiam) (unpublished). An insurance policy is a contract, and the policy's provisions govern the rights and duties of the contracting parties. See Gaston Cty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000); C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co., 326 N.C. 133, 142, 388 S.E.2d 557, 562 (1990). The insured party "has the burden of bringing itself within the insuring language of the policy." Nelson v. Hartford

5

Underwriters Ins. Co., 177 N.C. App. 595, 606, S.E.2d 221, 229 (2006) (quotation omitted).

Under North Carolina law, interpreting a written insurance contract is a question of law for the court. See Briggs v. Am. & Efird Mills, Inc., 251 N.C. 642, 644, 111 S.E.2d 841, 843 (1960); N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). "Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." Gaston Cty., 351 N.C. at 299, 524 S.E.2d at 563 (quotation omitted); see Plum Props., LLC v. N.C. Farm Bureau Mut. Ins. Co., 802 S.E.2d 173, 175 (N.C. Ct. App. 2017); Mizell, 138 N.C. App. at 532–33, 530 S.E.2d at 95. When interpreting a written insurance policy under North Carolina law, "the goal of construction is to arrive at the intent of the parties when the policy was issued." Gaston Cty., 351 N.C. at 299, 524 S.E.2d at 563 (2000) (quotation omitted); see Stewart Eng'g, Inc. v. Cont'l Cas. Co., No. 5:15-CV-377-D, 2018 WL 1403612, at *3–4 (E.D.N.C. Mar. 20, 2018) (unpublished), aff'd, No. 18-1386, 2018 WL 5832805 (4th Cir. Nov. 7, 2018) (per curiam) (unpublished); Plum Props., 802 S.E.2d at 175. Moreover, courts construe coverage clauses broadly and exclusionary clauses narrowly. See Plum Props., 802 S.E.2d at 175–76.

A court may engage in judicial construction only when the language used in the policy is ambiguous. See Mizell, 138 N.C. App. at 532, 530 S.E.2d at 95. Under North Carolina law, courts construe ambiguities against the insurer and in favor of the insured. See id. Language is not ambiguous, however, "simply because the parties contend for differing meanings to be given to the language." Id. Rather, an ambiguity exists if the policy's language is "fairly and reasonably susceptible to either of the constructions for which the parties contend." Blis Day Spa, LLC v. Hartford Ins. Grp., 427 F. Supp. 2d 621, 630 (W.D.N.C. 2006) (quotation omitted); see Westchester

Surplus Lines Ins. Co. v. Clancy & Theys Constr. Co., No. 5:12-CV-636-BO, 2014 WL 2157442, at *3 (E.D.N.C. May 23, 2014) (unpublished).

The parties agree that the insurance agreement is a valid contract under North Carolina law. They dispute whether Jewelers Mutual's denial of coverage constitutes a breach of contract. The insurance policy covers lost business income due to the "necessary suspension" of operations "caused by direct physical loss of or damage to" covered property that was "caused by or result[ed] from a Covered Cause of Loss." [D.E. 21] ¶ 35; [D.E. 22-5] 79. The policy generally excludes coverage for fungi, which includes mold and mildew, unless the fungi result from fire or lightning or damage results in a "specified cause of loss." See [D.E. 22-5] 91, 103. The policy provides for limited coverage in the event of a "specified cause of loss." Id. at 86. A "specified cause of loss" means, inter alia, "water damage." Id. at 104.[1] The policy also excludes loss or damage that result from "continuous or repeated seepage or leakage of water . . . that occurs over a period of 14 days or more." Id. at 93.

In December 2014, MB Goldsmiths first detected a water leak coming from a water tank in the adjacent restaurant. [D.E. 21] ¶¶ 13–14; [D.E. 24] ¶¶ 13–14. Jewelers Mutual determined that the long-term water leak and resulting mold caused MB Goldsmiths's loss of business income. See [D.E. 21] ¶ 33; [D.E. 22-6] ¶ 10. In support, Jewelers Mutual cites a report from its independent claims adjuster that concluded the "loss is the result of a long term leak" that "has been ongoing since at least December 2014." [D.E. 22-15] 3–4; see [D.E. 21] ¶ 32; [D.E. 22-6] ¶ 9(f). That report also noted "evidence of rust on the steel framing between the insured's unit" and the adjacent restaurant. [D.E. 22-15] 3; see [D.E. 22-6] ¶ 9(f).

---

[1] The limited coverage provision limits coverage to $15,000. See [D.E. 22-5] 86.

7

Although MB Goldsmiths argues that the precise cause of the odor was not identified and that the odor was a separate issue from the mold and the water leak, it fails to produce specific admissible evidence to rebut Jewelers Mutual's evidence and create a genuine issue of material fact. See [D.E. 24] ¶¶ 30, 32. MB Goldsmiths does not cite any evidence to support the theory that the mold, odor, and water leak were causally unrelated. "At summary judgment . . . a party disputing a fact must cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." LRP Hotels of Carolina, LLC v. Westfield Ins. Co., No. 4:13-CV-94-D, 2014 WL 5581049, at *4 (E.D.N.C. Oct. 31, 2014) (unpublished) (quotation and alteration omitted). Furthermore, the "nonmoving party . . . cannot create a genuine issue of material fact through mere speculation." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Even viewing the evidence in the light most favorable to MB Goldsmiths, no rational jury could find that the continuous water leak that occurred in 2014 over a period of 14 days or more from the adjacent restaurant did not cause the mold and odor that caused MB Goldsmiths's loss of business income. Accordingly, the court grants Jewelers Mutual's motion for summary judgment concerning MB Goldsmiths's breach of contract claim.

2.

As for Jewelers Mutual's motion for summary judgment concerning MB Goldsmiths's breach of the covenant of good faith and fair dealing claim, every contract contains "an implied covenant of good faith and fair dealing." Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (quotation omitted). Under the covenant, "neither party will do anything which injures the right of the other to receive the benefits of the agreement." Robinson v. Deutsche Bank Nat'l Tr. Co., No. 5:12-CV-590-F, 2013 WL 1452933, at *11 (E.D.N.C. Apr. 9, 2013) (unpublished)

(quotation omitted). Where parties have executed a written contract, an action for "breach of the covenant of good faith and fair dealing is part and parcel of a claim for breach of contract." McKinney v. Nationstar Mortg., LLC, No. 5:15-CV-637-FL, 2016 WL 3659898, at *8 (E.D.N.C. July 1, 2016) (unpublished) (alteration and quotation omitted); see Murray v. Nationwide Mut. Ins. Co., 123 N.C. App. 1, 19, 472 S.E.2d 358, 368 (1996); Lord of Shalford v. Shelley's Jewelry, Inc., 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000), aff'd, 18 F. App'x 147 (4th Cir. 2001) (per curiam) (unpublished). Accordingly, when a court rejects a breach of contract claim, it likewise rejects any claim for breach of the covenant of good faith and fair dealing contained in the contract. See, e.g., SunTrust Bank v. Bryant/Sutphin Props., LLC, 222 N.C. App. 821, 833, 732 S.E.2d 594, 603 (2012). Thus, the claim fails.

Alternatively, North Carolina law recognizes "a separate claim for breach of an implied covenant of good faith and fair dealing only in limited circumstances involving special relationships between parties, [such as] cases involving contracts for funeral services and insurance." Ada Liss Grp. (2003) v. Sara Lee Corp., No. 1:06-CV-610, 2009 WL 3241821, at *13 n.10 (M.D.N.C. Sept. 30, 2009) (unpublished) (quotation omitted), report and recommendation adopted by 2010 WL 3910433 (M.D.N.C. Apr. 27, 2010) (unpublished). "Outside such circumstances, actions for breach of good faith fail." Id. In the insurance context, a claim for breach of the covenant of good faith and fair dealing requires three elements: "(1) a refusal to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct." LRP Hotels of Carolina, 2014 WL 5581049, at *4 (quotations omitted); see, e.g., Gandecha v. Metro. Prop. & Cas. Ins. Co., No. 5:13-CV-688-F, 2014 WL 4243797, at *5 (E.D.N.C. Aug. 26, 2014) (unpublished).

Legitimate and honest disagreement over the scope of coverage under an insurance contract does not amount to bad faith. Rather, "when an insurer denies a claim because of a legitimate,

9

'honest disagreement' as to the validity of the claim, the insurer is entitled to judgment as a matter of law because the plaintiff cannot establish bad faith or any tortious conduct on the part of the insurer." Topsail Reef Homeowners Ass'n v. Zurich Specialities London, Ltd., 11 F. App'x 225, 238 (4th Cir. 2001) (per curiam) (unpublished); see Universal Underwriters Ins. Co. v. Lallier, 334 F. Supp. 3d 723, 736 (E.D.N.C. 2018). Bad faith does not encompass an "honest disagreement or innocent mistake." Lovell v. Nationwide Mut. Ins. Co., 108 N.C. App. 416, 421, 424 S.E.2d 181, 185 (1993) (quotation omitted); Dailey v. Integon Gen. Ins. Corp., 75 N.C. App. 387, 396, 331 S.E.2d 148, 155 (1985). Aggravated conduct includes "fraud, malice, gross negligence, [and] insult" as well as actions denying coverage "willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights." Universal Underwriters Ins., 334 F. Supp. 3d at 736 (quotation omitted); see Lovell, 108 N.C. App. at 422, 424 S.E.2d at 185; Guessford v. Pa. Nat'l Mut. Cas. Ins. Co., 918 F. Supp. 2d 453, 466 (M.D.N.C. 2013).

No genuine issue of material fact exists concerning whether Jewelers Mutual ever recognized a legitimate claim to coverage under the insurance policies. See, e.g., Huang v. State Farm Fire & Cas. Co., No. 5:14-CV-69-RN, 2015 WL 1433553, at *3–4 (E.D.N.C. Mar. 27, 2015) (unpublished); Barnett v. State Farm Auto Prop. & Cas. Ins. Co., No. 2:14-CV-34, 2015 WL 276512, at *3 (W.D.N.C. Jan. 22, 2015) (unpublished); Lenoir Mall, LLC v. State Farm Fire & Cas. Co., No. 5:10-CV-40, 2011 WL 3682794, at *2 (W.D.N.C. Aug. 23, 2011) (unpublished); Blis Day Spa, 427 F. Supp. 2d at 632. It did not. Rather, Jewelers Mutual concluded that it could deny MB Goldsmiths's claim in good faith. See [D.E. 21] ¶ 33. Accordingly, no genuine issue of material fact exists concerning the first element of a claim for breach of the covenant of good faith and fair dealing. Because Jewelers Mutual denied coverage based on a legitimate, good-faith disagreement, MB Goldsmiths also fails to show that bad faith or aggravating circumstances exist. See Topsail Reef,

11 F. App'x at 239; Blis Day Spa, 427 F. Supp. 2d at 632. Accordingly, the court grants Jewelers Mutual's motion for summary judgment concerning MB Goldsmiths's claim for breach of the covenant of good faith and fair dealing.

3.

As for Jewelers Mutual's motion for summary judgment on MB Goldsmiths's third claim, North Carolina law recognizes a tort for bad faith refusal to settle in the context of insurance. However, the elements of a bad faith refusal to settle claim are the same as those for breach of the covenant of good faith and fair dealing. See, e.g., Gandecha, 2014 WL 4243797 at *5; Defeat the Beat, Inc. v. Underwriters at Lloyd's London, 194 N.C. App. 108, 119, 669 S.E.2d 48, 55 (2008); Lovell, 108 N.C. App. at 420, 424 S.E.2d at 184. Thus, the court grants Jewelers Mutual's motion for summary judgment concerning MB Goldsmiths's bad faith refusal to settle claim.

B.

As for MB Goldsmiths's motion for partial summary judgment concerning liability on its breach of contract claim, MB Goldsmiths did not file the motion by the deadline established in this court's scheduling order. "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). On February 2, 2018, this court entered an amended scheduling order that required the parties to file all potentially dispositive motions by May 3, 2018 [D.E. 17]. On May 24, 2018, MB Goldsmiths filed its motion for partial summary judgment [D.E. 27].

A "scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Channing v. Equifax, Inc., No. 5:11-CV-293-FL, 2012 WL 2049918, at *1 (E.D.N.C. June 6, 2012) (unpublished) (quotation omitted). MB Goldsmiths should have filed its motion by the deadline established in this court's scheduling order. See, e.g., Embrex,

Inc. v. Serv. Eng'g Corp., No. 5:96-CV-824-BR, 1998 WL 35235446, at *1–2 (E.D.N.C. June 23, 1998) (unpublished). It did not, and the court denies the motion as untimely.

Alternatively, even if MB Goldsmiths had timely filed the motion, it repeats the same arguments it made in opposition to Jewelers Mutual's motion for summary judgment on the breach of contract claim. The arguments lack merit.

III.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 19] and DENIES plaintiff's motion for partial summary judgment [D.E. 27]. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This  9  day of January 2019.

                                                              JAMES C. DEVER III
                                                              United States District Judge